1825.
JUNE.

Lamborn
vs
Moore

A *fi. fa.* on a judgment obtained by *B* vs. *L*, was placed in the hands of *M*, a sheriff, and by him laid upon the land of *L*. At the sale, *L* perceiving that the land would not sell for its real value at that time, entered into an agreement with *W*, that he should bid it off, for account of *L*. with the consent of *M*, to enable *L* thereby to gain time to raise the amount of the judgment. *W* did bid it off for less than its value, with *M's* consent, but conceiving the design of converting the purchase to his own profit, entered into a fraudulent agreement with *M*, to retain the land for their mutual advantage, and then refused to relinquish it to *L*, who had raised money enough to satisfy the amount of the judgment. In an action on the case by *L* vs. *M*, the sheriff, for the breach of this agreement—*Held*, that the agreement was within the statute of frauds, and that the plaintiff could not recover.

## LAMBORN vs. MOORE.

*Appeal* from *Harford* county court. This was a special action on the case. The declaration stated, that the defendant, (now appellee,) on the 19th of August 1817, was sheriff of *Harford* county, and as such had sundry executions against the property of the plaintiff, (now appellant,) placed in his hands for collection, and which were issued out of *Harford* county court, on sundry judgments therein rendered, against the plaintiff, in favour of a certain *Buckler Bond*, amounting in the whole to about the sum of $4500, and which executions the defendant had laid upon the plaintiff's property, and did then and there proceed to advertise the same for sale at public vendue, to satisfy said executions, to wit, on the said 19th of August aforesaid. And that thereupon, the plaintiff, in order to prevent his said property from being sacrificed and sold for less than its value, did then and there, at the time and place of said sale, agree with a certain *John Watson*, to bid in said property for the plaintiff, and to endeavour to obtain from the defendant, until the Monday then next following, to pay the amount of the money due upon said executions. And the plaintiff averred, that the said *Watson*, in conformity with said agreement, did at the sale aforesaid, bid in the said property for him, and upon his account, for the sum of $5000, as he understood, and then and there verily believed. The plaintiff further averred, that after the said sale was over, the defendant did then and there agree to give the plaintiff, and the said *Watson*, until the Monday then next following, to raise the money and pay said executions. Yet the defendant, not regarding his said agreement and undertaking, but intending, craftily and fraudulently, to deceive and injure the plaintiff in this particular, and to prevent the plaintiff from retaining said property, or from selling it for what it was fairly and reasonably worth, and of paying said executions out of the proceeds thereof, and of retaining the balance for himself, but that the same might be held and retained by the said *Watson*, by virtue of his bid, for a small part of its actual value, to the great prejudice and injury of the plaintiff, the defendant did then and there, at the county aforesaid, on the day and year last aforesaid, secretly collude with, counsel, advise and aid the said *Watson*, to hold said pro-

perty by virtue of his said bid, that thereupon and thereby they the defendant and *Watson*, might sell the same for a larger sum, to wit, for the sum of $8000, which had been offered for it previous to said sale, upon their own account, and for their own benefit, and share the profit thereof between them. And the plaintiff further averred, that he did obtain the means of paying said executions to said *Bond*, for which the said property had been sold, by the time agreed upon with the defendant, and did apply to the defendant to receive the full payment thereof with the said *Bond*, and as he the said *Bond* had agreed, and was willing and desirous to receive the same, and did require that the said executions should be discharged, and the property released; but the defendant then and there totally and absolutely refused to receive the money for said executions, as the said *Bond* had agreed with the plaintiff, although thereto requested by the plaintiff and the said *Bond*, to whom the whole of the money on said executions was due, and to be paid over by the defendant; but the defendant did then and there claim said property, and hold the same for the said *Watson*, by virtue of his said bid at the sale aforesaid, whereby the plaintiff was deprived of the power of selling said property for a much larger sum which had been offered for it, and of benefitting himself with the balance thereof, after paying the executions aforesaid; but by reason thereof, he totally lost the same, and was otherwise greatly injured, and entirely broken up in his business, and rendered unable to pay his debts; and by reason thereof, was afterwards compelled to petition for the benefit of the insolvent laws of this state. And the plaintiff further averred, that the defendant afterwards did return the property sold to the said *Watson*, and satisfied said executions; and that the defendant procured himself to be made trustee of the plaintiff, for the benefit of his creditors, and did afterwards proceed, at sundry times, to advertise all the plaintiff's right, title and interest, in and to said property, for sale, at public auction, and after the said sale to the said *Watson*, and did fraudulently cause the plaintiff's right and interest in said property to be sold for the sum of $300. By reason of all which premises, the plaintiff had been greatly injured, and suffered great loss and damage, to wit, the sum of $5000, &c. The defendant pleaded *non assumpsit*, to

1825

Lamborn
vs
Moore

1825
Lamborn
vs
Moore

which there was a general demurrer and joinder. The county court ruled the demurrer good, and that the defendant answer over. The defendant then pleaded not guilty, and issue was joined.

At the trial the plaintiff proved the several matters stated in his declaration; and the defendant proved, that the property, mentioned in said declaration, was land and real estate, and that the understandings and agreements in said declaration stated, had relation to said land and real estate, and to no other property; and also that the said understandings and agreements were not, nor were either of them reduced to writing, or any memorandum, or other writing, made of the same, nor was there any money paid for or on account of the same, or the said land, by the plaintiff, or by any one else for him, to the defendant. The defendant then prayed the opinion of the court to the jury, that the plaintiff was not entitled in law to recover. Which opinion the court, [*Hanson* and *Ward* A. J.] gave. The plaintiff excepted; and the verdict and judgment being against him, he appealed to this court.

The cause was argued before BUCHANAN, Ch. J. EARLE, and STEPHEN, J.

*Mitchell* and *Kennedy*, for the Appellant; relied on the following points:

1. That a special action on the case can be sustained against any person who, with a fraudulent intent, induces the plaintiff to confide in a third person, and intrust him with his property, knowing at the time that such third person intends to cheat him out of such property.

2. That the property being land, the intervention of a parol agreement, as one of the means of the contemplated fraud, does not vary the case.

3. That the statute of frauds cannot be interposed by the defendant to protect him in this case.

4. That it was a violation of the sheriff's duty to make the purchase, as stated in the declaration.

5. That a debtor under execution has a right to redeem, and it is not imperative on the sheriff to sell.

On the *first point*, they cited *Pasley vs. Freeman*, 3 T. R. 51. *Hamar vs. Alexander*, 5 Bos. & Pull. 241. *Eyre vs. Dunsford*, 1 East, 327. *Hart vs. Tallmadge*, 2 Day,

1825.

Lamborn
vs
Moore

381 *Burton vs. Loyd,* 3 *Esp. Rep.* 208; and *Russell vs. Clerk,* 7 *Cranch,* 92.

On the *second point—Rob. on Frauds,* 104, 120.

On the *third point—Rob. on Frauds,* 130, 135, 137. *Strickland vs. Aldridge,* 9 *Ves.* 519. *Hamar vs. Alexander,* 5 *Bos. & Pull.* 241; and *Eyre vs. Dunsford,* 1 *East,* 327.

On the *fourth point—Mark vs. Lawrence,* 5 *Harr. & Johns.* 64. *Turner vs. Fendall,* 1 *Cranch,* 136, 137. 1 *Sellon's Pr.* 513. *Davoue vs. Fanning,* 2 *Johns. Chan. Rep.* 264, 269, 270; and *Ex parte Bennett,* 10 *Ves.* 381, 394. And

On the last *point—Edmunds vs. Watson,* 7 *Taunt.* 5. 1 *Sellon's Pr.* 525; and *Simonds vs. Catlin,* 2 *Caine's Rep.* 61.

*R. Johnson* and *Gill,* for the Appellee, relied upon *Lamborn vs. Watson, (ante* 252.) *Elsee vs. Galward,* 5 *T. R.* 148, 151. 1 *Saund.* 312, *(note* c.) 1 *Chitty's Plead.* 133, 368. *Boring's Lessee vs. Lemmon,* 5 *Harr. & Johns.* 223. *Bull's Lessee vs. Sheredine,* 1 *Harr. & Johns.* 410; and *Barney vs. Patterson's Lessee, (ante* 182.)

EARLE, J. delivered the opinion of the court. This is an action on the case in nature of a deceit, and is grounded on the facts alleged and proved, that the lands of the plaintiff were sold by the defendant, as sheriff of *Harford* county, under sundry writs of *fieri facias,* issued on judgments obtained against him by *Buckler Bond,* and bid in at a sum, greatly below their value, by a certain *John Watson,* who, to prevent a sacrifice of his property, and gain time for the plaintiff, agreed with him to purchase the lands for his benefit. That after the sale was over, the defendant agreed to give the plaintiff and *Watson,* until the Monday next following the sale, to raise the money and pay the executions; that not regarding his agreement and undertaking, but fraudulently intending to deceive and injure the plaintiff, he colluded with, advised and aided *Watson,* to hold the property by virtue of his bid, that he and *Watson* might sell the same for a larger sum upon their own account, and for their own benefit, and share the profits between them; and that in execution of their fraudulent design, the defendant refused to receive the money for the executions offered to him by the plaintiff by the time agreed on, but claimed the property, and held the same for *Watson* by virtue of his bid, and afterwards returned the property sold to *Watson,* and satisfied the executions.

The greater part of these facts were examined by this court, in deciding *Lamborn and Watson* at the last term; like this case it was in form an action founded on a deceit, but was clearly intended to recover damages for a fraud, in the nonperformance of what may perhaps be called a fair agreement between the parties. That agreement being a verbal one for the sale of land, was determined by the court to be within the statute of frauds, and by its operation, to be a void contract; and it was decreed, that the attempt to recover for the fraud, subsequently conceived and practiced, in withholding an execution of the agreement, was evasive of the statute, and could not avail. Can this action then, growing out of the same contract, be in law supported?

The defendant here was not a contracting party in the agreement anterior to the sale, but he is charged with secretly colluding with, advising and aiding *Watson*, to hold the property by virtue of his bid, that they might sell the same for a larger sum on their own account, and for their own benefit; and share the profits between them, and with retaining the property sold to *Watson*, and satisfying the executions. This is the gist of the action, and is in substance the same facts that formed the ground work of the suit against *Watson*. Notwithstanding the fraud that supervened, the nonexecution of the agreement by him was pronounced not to be actionable; and his counsellor, however reprehensible we think him, cannot be exposed to greater liabilities. To the adviser the same law must be meted as was measured to the advised. They are in *pari delicto*, and a higher punishment ought not to await the one than the other, and if the breach of *Watson's* contract is unsusceptible of being enforced for one purpose, it should be so deemed for every purpose. Whatever abhorrence, therefore, we may feel for the conduct of *Moore*, as portrayed in the record, we must decide, that the action against him is not supported.

There is one particular in which this case may be said to differ from that against *Watson*, although in our opinion it does not lead to a different result. *Moore* is charged with violating his agreement, to give the plaintiff and *Watson* until the Monday following the sale to raise the money, and pay off the executions, and it was insisted on the argument to be the foundation of this suit. But it evident-

ly cannot be so considered; and from the complexion of the case, is plainly an item of the deceptious conduct imputed to the defendant, as manifesting a disposition in him to aid *Watson* in defrauding the plaintiff. If it was viewed, however, as a substantive ground of action, we cannot see how it could be made to support the plaintiff's case. It is not an undertaking to the plaintiff singly, but to him and *Watson,* and the latter at least was not for exacting an observance of it.

We concur with *Harford* county court in the instructions given to the jury, and affirm the judgment.

JUDGMENT AFFIRMED